07-0600-ag
Zaman v. Mukasey

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2007

(Submitted: December 5, 2007)                    Decided: January 23, 2008 )

Docket No. 07-0600-ag

———————————

MOHAMMAD ZAMAN,
                                                          *Petitioner,*

-*v.*-

MICHAEL B. MUKASEY, Attorney General,[*]
                                                          *Respondent.*

———————————

BEFORE:          STRAUB and HALL, *Circuit Judges*, and HAIGHT, *District Judge.*[**]

Petition for review of a final decision of the Board of Immigration Appeals affirming the

denial by an Immigration Judge of the petitioner's application for withholding of removal and

relief pursuant to the Convention Against Torture.  The Immigration Judge ("IJ") expressed

"grave doubts" about the petitioner's credibility after the petitioner submitted two identical-

appearing photographs that he claimed were distinct photographs taken six years apart, but the IJ

did not specifically state the grounds for denying the application.  Given the analysis as

explained in his decision, we hold that the IJ here made the sort of "explicit credibility finding"

---

[*]Attorney General Michael B. Mukasey is substituted for former Attorney General
Alberto Gonzales pursuant to Fed. R. App. P. 43(c)(2).

[**]The Honorable Charles S. Haight, Jr., United States District Judge for the Southern
District of New York, sitting by designation.

required by *Diallo v. INS*, 232 F.3d 279, 290 (2d Cir. 2000). We also hold that the adverse credibility determination was supported by substantial evidence.

Petition for review denied.

Amy N. Gell, Gell & Gell, New York, NY, *for Petitioner*.

Peter D. Keisler, Civil Division, U.S. Department of Justice, (Jeffrey J. Bernstein, Rebecca A. Niburg, Office of Immigration Litigation, *on the brief*), *for Respondent*.

PER CURIAM:

Petitioner Mohammad Zaman, a native and citizen of Pakistan, seeks review of a January 22, 2007 order of the Board of Immigration Appeals ("BIA") affirming the August 20, 2005 decision of IJ George T. Chew denying petitioner's application for withholding of removal and relief under the Convention Against Torture ("CAT").[1] *In re Mohammad Zaman*, No. A95 959 889 (B.I.A. Jan. 22, 2007), *aff'g* No. A95 959 889 (Immig. Ct. N.Y. City, Aug. 20, 2005). Zaman asks this Court to vacate the agency's decision because it was not supported by substantial evidence. Both Zaman and the Government assume, without discussion, that the IJ's sparse oral decision, and the BIA's order affirming the decision, contained an "explicit credibility finding" sufficient under *Diallo v. INS*, 232 F.3d 279, 290 (2d Cir. 2000), to alert us to the grounds for the denial of the withholding and CAT claims.[2] We agree with both parties'

---

[1] Zaman conceded that his application for asylum was untimely in that he failed to file it within one year of his entry into the United States. *See* 8 U.S.C. § 1158(a)(2)(B). He does not challenge the pretermission of his asylum claim in his brief to this Court.

[2] Zaman states in his brief that the BIA did not mention credibility in its order affirming the IJ's decision and that the IJ "never specifically enumerated" what doubts he had about Zaman's credibility. Zaman does not argue, however, that the agency failed to comply with *Diallo*.

2

assumptions that the agency did make the required explicit credibility determination, and we write to explain why, in this particular case, the IJ's decision satisfied *Diallo*. We further conclude that the adverse credibility determination was supported by substantial evidence in the record.

## I. Background

Zaman was admitted into the United States as a nonimmigrant visitor in August 1999 and was placed in removal proceedings in February 2003. In 2004 he filed an application for asylum, withholding of removal, and CAT relief. Zaman alleged that he was persecuted by members of the Pakistan Muslim League ("PML"), including his own brother, on account of his membership in the Pakistan Peoples Party ("PPP").

At an August 2005 hearing, Zaman introduced, *inter alia*, a copy of his passport, allegedly issued in June 1996, and a PPP membership card, allegedly issued in January 1990. The attorney for the Government asked Zaman when the picture affixed to the passport was taken, and Zaman replied that it was taken in June 1996, when the passport was issued. The attorney for the Government then confirmed that Zaman received his PPP card in 1990. The following colloquy then occurred:

> [Attorney for the Government]: Okay. Can you explain how a photograph, the same photograph of a document that was issued in 1990 appears in your passport that was issued in 1996?
>
> [Zaman]: Same photograph.
>
> [Attorney for the Government]: Right, but you just told me this photograph wasn't taken until '96. The card was issued in 1990. That's impossible.

3

> [Zaman]: No, no. That's a second photo. The passport
> photograph was taken before and the other photograph got after.
> [sic] Those are different photographs.

Hearing Tr. Aug. 20, 2005, at 26.

After Zaman's testimony, the IJ issued a short oral decision that denied the withholding

and CAT claims. With respect to the merits of the withholding claim, the IJ stated that Zaman

"ha[d] not met the standard [for] demonstrating that he would [] more likely than not be

persecuted on the basis of his political opinion." He reasoned:

> In this case, the Court has grave doubts concerning the
> respondent's credibility. In fact, his [application for asylum and
> withholding] is skeletal at best. He apparently had some problems
> with his brother who wanted to kill him for his share of the
> property. The Court is not convinced that the respondent was a
> political leader or worker as he states he was. It is very significant
> that if the respondent was fleeing persecution from Pakistan that he
> would have applied for asylum upon entry to the United States. He
> only submitted an application on April 27th, 2004 . . . . And
> significantly, . . . when [the PPP card is] compared to the photo in
> his passport, [it] is the identical photo a[nd] the background is
> identical. Yet, the respondent maintains that the photo was taken
> in 1996 at the same time his passport was taken. It's patently
> impossible. It's very clear that the [PPP] card . . . was generated
> solely for the purpose of this hearing and it's more likely than not,
> not a valid document.

*In re Mohammad Zaman,* No. A95 959 889 (Immig. Ct. N.Y. City, Aug. 20, 2005). The IJ also

found that Zaman had provided no evidence that he would be tortured if he returned to Pakistan.

Zaman appealed the IJ's decision to the BIA, arguing that the IJ "erred in not finding

Respondent's testimony credible," in that he "placed too much weight on unreasonably minor

points." The BIA dismissed the appeal, concluding that there was "no clear error in the

Immigration Judge's factual findings regarding the nature of the respondent's past experiences in

Pakistan, and the likelihood of his being harmed in the future." *In re Mohammad Zaman*, No.

4

A95 959 889 (B.I.A. Jan. 22, 2007).  It also found that "[t]he respondent's political experiences were rightfully called into question by the Immigration Judge."  *Id.*

Zaman petitions for review of the BIA's order.

## II.  Discussion

### A.  Standard of Review

When the BIA does not expressly "adopt" the IJ's decision, but "its brief opinion closely tracks the IJ's reasoning," this Court may consider both the IJ's and the BIA's opinions "for the sake of completeness."  *Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006).  This Court reviews the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g.*, *Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289 (2d Cir. 2007).  However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed.  *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir. 2005).

### B.  *Diallo v. INS*

In *Diallo*, this Court found that, when evaluating the sufficiency of the evidence presented by an asylum candidate, an IJ must: (1) "decide explicitly" whether or not the candidate's testimony was credible (without relying exclusively on the lack of corroborating evidence); and, if credible, (2) determine whether additional corroboration is nonetheless necessary for the candidate to meet his or her burden of proof.  232 F.3d at 290.  This Court explained that an explicit credibility determination is important to ensure that an alien receives the "potential benefit" of succeeding on credible testimony alone, as well as to ensure that

appellate review of such a determination is preserved. *Id.* at 287. Our review is frustrated when it is unclear whether the agency has made an adverse credibility determination—for example, when an IJ notes problems with parts of an applicant's story that go to the applicant's credibility but does not make the ultimate conclusion that the entirety of the testimony suffers from a lack of credibility.[3] Vague, unclear, and passing statements do not suffice to fulfill the agency's obligation to "rule explicitly on the credibility of [a petitioner's] testimony." *Id.*; *see also Diallo v. Gonzales,* 439 F.3d 764, 766 (7th Cir. 2006) (explaining that a "passing reference implying doubt" is not an "express credibility finding" (internal quotation marks omitted)). After all, we limit our review to the reasons articulated by the agency and cannot "assume a hypothetical basis for [its] determination." *Cao He Lin*, 428 F.3d at 400.

Nevertheless, we conclude that the IJ's analysis in the present case was sufficient to qualify as an "explicit credibility finding." The IJ expressed his doubts about Zaman's credibility and cited three reasons for these doubts: (1) the asylum application was "skeletal at best"; (2) Zaman waited several years to apply for asylum; and (3) the PPP card was fraudulent. There was no other analysis in this atypically short oral decision that would lead this Court to conclude that the IJ relied on grounds other than credibility. Moreover, that the IJ's doubts were "grave," and that he found Zaman's explanations "patently impossible" leave no doubt that his remarks about Zaman's credibility were not offhand. Finally, while the BIA's order does not explicitly tell us whether the IJ made an adverse credibility determination, neither does it

---

[3] While Zaman's application was filed on April 27, 2004, we note that for asylum and withholding applications filed after May 11, 2005, the effective date of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, there is a rebuttable presumption on appeal that a witness is credible "if no adverse credibility determination is explicitly made" by the IJ. 8 U.S.C. § 1158(b)(1)(B)(iii); *see also* 8 U.S.C. § 1231(b)(3)(C).

6

indicate that the IJ's decision was anything else. For all of these reasons, we find that the agency made the sort of "explicit credibility finding" required by *Diallo* in order to provide this Court with a meaningful opportunity for review.[4] *See Diallo*, 232 F.3d at 287; *cf. Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) ("[W]e require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful."); *Guan Shan Liao v. U.S. Dep't of Justice*, 293 F.3d 61, 68 (2d Cir. 2002) ("When the Board decides a case . . . using summary language with little explanation for the conclusion reached, intelligible appellate review is made difficult.").

## C. Withholding of Removal Claim

To qualify for withholding of removal, Zaman would have to show that it is more likely than not that his life or freedom would be threatened in Pakistan because of his political opinion. *See* 8 U.S.C. § 1231(b)(3)(A). The agency's determination that Zaman did not meet his burden because he lacked credibility is supported by substantial evidence. The photographs on Zaman's 1996 passport and 1990 PPP membership card appear to be identical. The IJ gave Zaman an opportunity to explain the similarity of the photos. Zaman testified that, despite their appearances, the photograph on the PPP card and the photograph on the passport were different

---

[4] The facts of the present case are distinguishable from *Diallo* in that the IJ in *Diallo* based her credibility determination on Diallo's "inability or unwillingness to provide supporting documentation," and further noted that Diallo had not offered "specific, credible detail" about his experiences. 232 F.3d at 284. The rule that IJs must make an "explicit credibility finding" thus arose in the context of an agency decision that seemingly ignored the proposition that an applicant can meet his burden of proof based on credible testimony alone. We think the rule holds equal force in the context of any agency decision that, like the present one, denies an application for relief based on a failure of proof, no matter whether lack of corroboration is a stated concern of the IJ. *See, e.g., Utama v. Gonzales*, 235 Fed. Appx. 810, 811-12 (2d Cir. 2007) (summary order).

7

because "[t]he passport photograph was taken before . . . the other photograph." It was appropriate for the IJ to reject this explanation, as no reasonable factfinder would be compelled to credit the notion that an identical photograph on a 1990 membership card could be taken *after* the original of the photograph was produced in 1996 for the issuance of a passport. *See Majidi v. Gonzales*, 430 F.3d 77, 80-81 (2d Cir. 2005); *see also Siewe v. Gonzales*, 480 F.3d 160, 169 (2d Cir. 2007). It was, moreover, reasonable for the IJ to infer that the PPP membership card was fraudulent because that "inference [was] made available . . . by record facts," i.e., the identical nature of the photographs appearing on documents allegedly issued more than six years apart. *Siewe*, 480 F.3d at 169.

The invalidity of the PPP membership card was a proper basis for discrediting the remainder of Zaman's testimony.[5] Once an IJ concludes that a document is false, he is "free to deem suspect other documents (and to disbelieve other testimony) that depend for probative weight upon [the applicant's] veracity." *Id.* at 170; *see also In re O-D-,* 21 I. & N. Dec. 1079 (B.I.A. 1998). The PPP card does not fall within any exceptions to this rule. First, there was no testimony or evidence that was "independently corroborated" and that the IJ failed to assess. *Siewe*, 480 F.3d at 170. Second, the PPP card was not created to "escape persecution," but instead was "submitted as genuine to the IJ." *Id.* (emphasis removed). Third, Zaman's PPP card was not "wholly ancillary to [his] claim, but was an essential piece of evidence offered to

---

[5] We are not convinced that the other two grounds for the adverse credibility determination—that Zaman's application was skeletal and that he waited years to file an asylum application—are proper bases, by themselves, for an adverse credibility determination. Nevertheless, because we are confident that the IJ here would have found Zaman incredible even without relying on these additional grounds, we can confidently conclude that there would not be a different result on remand. *See Cao He Lin,* 428 F.3d at 395.

corroborate his alleged political opinion." *Id.* Fourth, the false evidence at issue did not include "statement[s] made during an airport interview." *Id.* at 171. Finally, nothing in the record indicates that Zaman "d[id] not know, and ha[d] no reason to know, [the PPP card was] inauthentic." *Id.* In fact, Zaman vouched for the card's authenticity. In light of the foregoing, it was permissible for the IJ to conclude that the party ID card was fraudulent, based on the similarity between the two photos, and to rely on this conclusion to call into question the other aspects of Zaman's testimony. *See id*. at 170-71.

Finally, we note that after the briefs were submitted in this case, but before it was decided, another panel of this Court issued an opinion in *Niang v. Mukasey*, No. 05-0136-ag, ___ F.3d ___, 2007 WL 4409785 (2d Cir. Dec. 19, 2007). There we held that "where . . . an applicant's testimony is otherwise credible, consistent and compelling, the agency cannot base an adverse credibility determination solely on a speculative finding that the applicant has submitted inauthentic documents in support of his application." *Id.* at *1. *Niang* is distinguishable from the case at hand. First, in that case, the IJ based his determination that the document in question appeared to be fraudulent on four reasons, all of which this Court found to be "problematic." *Id.* at *6. In contrast, as explained above, the IJ's determination in this case that the party ID card was fraudulent was supported by substantial evidence. *Cf. id.* at *5 ("An IJ is fully entitled to make findings concerning the authenticity of submitted evidence, based on her own examination and her professional analysis. Such findings will ordinarily merit deference."). Second, the IJ in *Niang* explicitly found the applicant's testimony to be "otherwise credible," *id.* at *5-6, whereas in the current case, the IJ made no such finding. In fact, the IJ here gave reasons other than the fraudulent ID card for doubting Zaman's credibility.

9

Accordingly, *Niang* is not controlling in the present case, and the IJ properly found that Zaman's submission of a fraudulent document undermined his overall credibility. *See Siewe*, 480 F.3d at 170-71.

## D. CAT Claim

Substantial evidence supports the IJ's determination that Zaman failed to demonstrate that it was more likely than not that he would be tortured if he returned to Pakistan. *See Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 134 (2d Cir. 2003). Zaman argues that the agency ignored evidence relevant to the CAT claim, but he does not point to anything in the record to support the claim. Accordingly, we affirm the denial of Zaman's claim for relief under the CAT.

## III. Conclusion

For the foregoing reasons, the petition for review is denied.